1

2

3

4                              **UNITED STATES DISTRICT COURT**

5                                    **DISTRICT OF NEVADA**

                                              * * *

6    Terry M.,                                    Case No. 2:22-cv-01497-DJA

7                        Plaintiff,

8          v.                                             **Order**

9    Kilolo Kijakazi, Acting Commissioner of
     Social Security,

10                       Defendant.

11

12          Before the Court is Terry M.'s ("T.M.") motion for reversal and/or remand (ECF No. 24)

13   and the Commissioner's cross motion to affirm (ECF No. 29) and response (ECF No. 30).  T.M.

14   filed a reply.  (ECF No. 31).  Also before the Court is T.M.'s motion to substitute a party under

15   Federal Rule of Civil Procedure 25(a).  (ECF No. 23).  In that motion, counsel for T.M. seeks to

16   substitute Laura S.—T.M.'s adult child—as the Plaintiff  after T.M. passed away on September

17   10, 2022.  The Commissioner did not oppose the motion to substitute.

18          The Court grants T.M.'s motion to substitute Laura S. as Plaintiff.  (ECF No. 23).

19   Because the Court finds that the Administrative Law Judge's ("ALJ") determination that T.M.

20   was not disabled prior to September 30, 2017 (his date last insured) was supported by substantial

21   evidence, it denies Plaintiff's motion for reversal and/or remand and grants the Commissioner's

22   cross motion to affirm.  The Court finds these matters properly resolved without a hearing.  LR

23   78-1.

24   **I.    Background.**

25          ***A.    Procedural history.***

26          T.M. filed an application for a period of disability and disability insurance benefits

27   ("DIB") on May 28, 2017 alleging disability commencing March 1, 2017.  (ECF No. 24 at 3).

28   The Commissioner denied the claims by initial determination on August 27, 2017 and again on

1   reconsideration on June 28, 2018. (*Id.*). T.M. requested a hearing before an ALJ on August 8,

2   2018. (*Id.*). The ALJ issued an unfavorable decision on January 10, 2020. (*Id.*). On August 27,

3   2020, the Appeals Council granted the request for review and remanded for further proceedings.

4   (*Id.*). The ALJ conducted a hearing on remand and published an unfavorable decision on July 16,

5   2021. (*Id.*). T.M. again requested that the Appeals Council review the decision, which request

6   the Appeals Council denied on July 18, 2022, making the ALJ's decision the final agency

7   decision. (*Id.*).

8        Although not before the Court, T.M.'s application for social security income ("SSI")[1] is

9   relevant to this order. T.M. filed an application for SSI on September 7, 2017. (*Id.* at 8). The

10  Commissioner approved T.M.'s application on August 3, 2018. (*Id.*). The Commissioner found

11  that T.M. was disabled as of September 2017. (*Id.*).

12       **B.    *The ALJ decision.***

13       In determining T.M.'s DIB application, the ALJ followed the five-step sequential

14  evaluation process set forth in 20 C.F.R. § 416.920(a). (AR 19-31). At step one, the ALJ found

15  that T.M. had not engaged in substantial gainful activity since March 1, 2017 through his date last

16  insured of September 30, 2017. (AR 19). At step two, the ALJ found that T.M. had the following

17  severe impairments: degenerative disc disease of the cervical and lumbar spine, neuropathy,

18  organic brain syndrome secondary to mild hypoxic encephalopathy, schizoaffective disorder, and

19  chronic obstructive pulmonary disease. (AR 19). At step three, the ALJ found that T.M. did not

20  have an impairment or combination of impairments that meets or medically equals the severity of

21  one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. (AR 21). In making

22

23

24  ——————————————

25  [1] Qualification for SSI under Title XVI has no insured status requirements, but instead pays benefits based upon economic need. *Russell C. v. Saul*, No. 3:20-cv-00256-MMA-RBM, 2021 WL 130025, at *6 (S.D. Cal. Jan. 14, 2021) (citing *White v. Bowen*, 835 F.2d 974, 975 (2nd Cir. 1987)). To qualify for DIB under Title II, the claimant's disability must manifest on or before the date of eligibility expires (i.e., the date last insured). *Id.* (citing *Arnone v. Bowen*, 882 F.2d 34, 38 (2nd Cir. 1989) and *Perez v. Shalala*, No. 93-civ-7262(JFK), 1995 WL 367092, at *1 (S.D.N.Y. Apr. 7, 1995)).

this finding, the ALJ considered Listings 1.15, 11.14, 3.02, 11.00, 12.02, 12.03, 12.04, and 12.06. (AR 21-22).

At step four, the ALJ found that T.M. had a residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b):

> He could lift and/or carry 20 pounds occasionally and 10 pounds frequently,  He could sit, stand, and/or walk for about 6 hours each in an 8-hour workday, with normal breaks.  Pushing and/or pulling were unlimited except for as indicated for lifting and/or carrying. He could frequently climb ramps and/or stairs, but could not climb ladders, ropes, and/or scaffolds.  He could frequently balance.  He could occasionally stoop, kneel, crouch, and crawl.  He could frequently reach in front and/or laterally with his left upper extremity, but only occasionally reach overhead.    He could frequently handle and finger with his left upper extremity.  He had to avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation, and concentrated exposure to hazards.  He could perform simple repetitive tasks.

(AR 23).

At step five, the ALJ found that T.M. was unable to perform any past relevant work as a press operator, exterminator, and sorter/pricer.  (AR 29)  However, the ALJ found that there existed jobs in significant numbers in the national economy that T.M. could have performed including product assembler, product gluer, and product trimmer.  (AR 29-30).  Accordingly, the ALJ found that T.M. had not been disabled from March 1, 2017 through September 30, 2017, the date last insured.  (AR 30).

II.    **Standard.**

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g).  *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002).  Section 405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action…brought in the district court of the United States for the judicial district in which the plaintiff resides."  The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a

rehearing." *Id.* The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner *de novo*. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When a court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, the Ninth Circuit has recognized that in appropriate

circumstances, courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits. *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). The Ninth Circuit has devised a three-part standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* at 1020.

## III.    Disability evaluation process.

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.*; 20 C.F.R.

§ 404.1572(a)-(b).  If the individual is engaged in SGA, then a finding of not disabled is made.  If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities.  20 C.F.R. § 404.1520(c).  An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work.  20 C.F.R. § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28.   If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made.  If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made.  20 C.F.R. § 404.1520(a)(4)(iii).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's RFC, which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p.  In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529; *see also* SSR 16-3p.  To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire

1    case record.  The ALJ must also consider opinion evidence in accordance with the requirements

2    of 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017.

3           Step four requires the ALJ to determine whether the individual has the RFC to perform his

4    past relevant work ("PRW").  20 C.F.R. § 404.1520(f).  PRW means work performed either as the

5    individual actually performed it or as it is generally performed in the national economy within the

6    last fifteen years or fifteen years before the date that disability must be established.  In addition,

7    the work must have lasted long enough for the individual to learn the job and performed at SGA.

8    20 C.F.R. §§ 404.1560(b) and 404.1565.  If the individual has the RFC to perform his past work,

9    then a finding of not disabled is made.  If the individual is unable to perform any PRW or does

10   not have any PRW, then the analysis proceeds to step five.

11          Step five requires the ALJ to determine whether the individual can do any other work

12   considering her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  If she can

13   do other work, then a finding of not disabled is made.  Although the individual generally

14   continues to have the burden of proving disability at this step, a limited burden of going forward

15   with the evidence shifts to the Commissioner.  The Commissioner is responsible for providing

16   evidence that demonstrates that other work exists in significant numbers in the national economy

17   that the individual can do.  *Yuckert*, 482 U.S. at 141-42

18   **IV.   Analysis and findings.**

19          *A.      T.M.'s motion to substitute.*

20          Plaintiff's counsel moves to substitute Laura S. as the Plaintiff in the matter after T.M.

21   passed away on September 10, 2022.  (ECF No. 23).  The Commissioner did not respond to the

22   motion.  However, the Commissioner indicated in a footnote in the countermotion that the

23   Commissioner "takes no position on this motion, but notes that a daughter is a qualifying relative

24   under the statute and regulations."  (ECF No. 29 at 1).

25          Under Federal Rule of Civil Procedure 25(a)(1), if a party dies and the claim is not

26   extinguished, the court may order substitution of the proper party.  That rule specifies that, if the

27   motion is not made within ninety days after service of a statement noting the death, the action by

28   or against the decedent must be dismissed.  Therefore, in evaluating a motion under Rule

1   25(a)(1), the Court must consider whether: (1) the motion is timely; (2) the claims pled are

2   extinguished; and (3) the person being substituted is a proper party. *Johnson v. Commissioner of*

3   *Social Security*, No. 1:21-cv-01066-EPG, 2022 WL 413232, at *1 (E.D. Cal. Jan. 25, 2022).

4          Under the Social Security Act, certain survivors may be entitled to posthumous payments

5   of benefits. *See* 42 U.S.C. § 1383(b)(1)(A); 20 C.F.R. §§ 404.503, 416.542(b).  Supplemental

6   security income payments may only be paid to an eligible surviving spouse, but disability

7   insurance benefits may be paid to a child of the deceased applicant. *See Maseda v. Saul*, No.

8   1:20-cv-01657-JLT, 2021 WL 2268871, at *1-2 (E.D. Cal. June 3, 2021) (addressing 20 C.F.R.

9   § 416.524(b) which indicates that SSI payments may only be paid to an eligible surviving spouse,

10  and 20 C.F.R. § 404.503(b)(2) which provides that DIB may be paid to a child of the deceased

11  applicant).  Finally, the failure to respond to a motion constitutes a consent to the granting of the

12  motion under Local Rule 7-2(d).

13         The Court grants the motion to substitute.  The motion is timely, having been filed within

14  ninety days of T.M.'s death.  The claims are also not extinguished because, although T.M. has no

15  surviving eligible spouse, his claim is for DIB, not SSI, meaning his claim is not extinguished

16  upon his death.  (ECF No. 1-1 at 2-4).  Finally, Laura S. is a proper party under 20 C.F.R.

17  § 502(b)(2), which provides that the child of the deceased individual is the second highest priority

18  after a surviving spouse.  Laura S. has filed a declaration that T.M. has no surviving spouse and

19  that she is his only child.  Finally, the Commissioner has not responded to the motion,

20  constituting consent to this Court granting it.

21         **B.      *Whether the ALJ's RFC is supported by substantial evidence.***

22                1.      The parties' arguments.

23         Plaintiff argues that the ALJ failed to consider Dr. Jon Arnow's "projected" RFC that

24  T.M. was disabled as of March 1, 2017, but would improve to the point of being able to engage in

25  light work by February 28, 2018.  (ECF No. 24).  Plaintiff explains that Dr. Arnow's projection—

26  and Dr. G. Williams' concurrence in that projection—"did not come to fruition as demonstrated

27

28

by the June 18, 2018[2] consultative examination limiting T.M. to a range of sedentary work."
Plaintiff also argues that the ALJ erred by ignoring the projected RFC in developing T.M.'s RFC,
which RFC determined that T.M. could engage in a range of light work from March 1, 2017
through September 30, 2017.

The Commissioner responds that the ALJ appropriately evaluated Drs. Arnow and
Williams' findings in determining T.M.'s RFC.  (ECF No. 29).  The Commissioner points out
that the ALJ found Drs. Arnow and Williams opinions—that T.M. was capable of performing
light exertional work with additional postural, manipulative, and environmental limitations
applying one year from T.M.'s initial onset date—supported and consistent with the record and
thus persuasive.  The ALJ was not required to conclude that T.M.'s subsequent worsening as of
the June 2018 examination should retroactively change Drs. Arnow and Williams' findings.  And
contrary to Plaintiff's argument that the ALJ did not address the worsening demonstrated by the
consultative examination, the Commissioner points out that the ALJ did review the examination
and nonetheless maintained the conclusion that T.M. was capable of light exertional work.

Plaintiff replies that the projected RFC offered by Dr. Arnow supports T.M.'s contention
that he established that he was disabled prior to his date last insured.  (ECF No. 31).  Plaintiff
asserts that the ALJ either ignored or was not aware of the significance of a projected RFC.  Thus,
the ALJ's finding that T.M. was not disabled prior to September 30, 2017 was not supported by
substantial evidence.

2.   Analysis.

For claims filed on or after March 27, 2017, new regulations apply that change the
framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules
Regarding Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18,
2017); 20 C.F.R. §§ 404.1520c, 416.920c.  Under the prior regulations, the Ninth Circuit held that
an ALJ must provide clear and convincing reasons to reject a treating physician's uncontradicted

---

[2] Plaintiff refers to a June 18, 2018 consultative examination performed by Joseph Noya, P.A., in which examination P.A. Noya opined that T.M. was limited to a range of sedentary work, a greater limitation than light work.  (AR 1264-66).

opinion and must provide specific and legitimate reasons to reject a treating physician's contradicted opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (as amended). However, the new regulations provide the ALJ will no longer "give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844-01, at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment relationship, and examining relationship), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Agency's] disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore, the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The regulations provide, in pertinent part:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The ALJ may, but is not required to, explain how "the factors in paragraphs (c)(3) through (c)(5)," *i.e.*, "[r]elationship with the claimant," "[s]pecialization," and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The Court finds that the ALJ's RFC is supported by substantial evidence and that the ALJ did not err in considering Drs. Arnow and Williams' opinions. Plaintiff's first argument on this point—that the ALJ erred by not finding that the June 18, 2018 examination demonstrated that T.M. would never have reached the RFC projected by Dr. Arnow—is not fully developed. Plaintiff only asserts that Dr. Arnow's projection that T.M. could perform light work by February 28, 2018 "did not come to fruition as demonstrated by the June 18, 2018 consultative examination limiting T.M. to a range of sedentary work." (ECF No. 24 at 7). However, the June 18, 2018 examination occurred after the date on which Dr. Arnow projected that T.M. would have the capacity to perform light work—February 18, 2018—and well after T.M.'s date last insured— September 30, 2017. The ALJ even explicitly considered the June 18, 2018 examination and found that "this opinion was based on an examination performed several months after the date last insured…[and] it is inconsistent with the medical evidence relevant to the date last insured, particularly the clinical findings…Thus, this opinion is not persuasive." (AR 28).

Plaintiff's second argument on this point is also underdeveloped. Plaintiff asserts that "[t]he ALJ's finding that [T.M.] could engage in a range of light work from March 1, 2017 through September 30, 2017, the date last insured is undercut by the projected RFC. The ALJ ignored this salient factor in assessing the RFC in this case." (ECF No. 24 at 7-8). But Plaintiff provides no authority regarding how or whether the ALJ was required to consider a consultative examiner's projected RFC when determining a claimant's RFC. Instead, Plaintiff cites the Program Operations Manual System ("POMS") DI 24510.020 which explains when a claimant's RFC must be projected. (ECF No. 24 at 6). But this provision of the POMS does not mandate that the ALJ was required to adopt a consultative examiner's projected RFC. Additionally, Plaintiff does not assert that the ALJ otherwise improperly evaluated Drs. Arnow and Williams'

1   opinions or the opinions of any other medical providers.  Without more, the Court cannot find

2   that the ALJ's RFC lacks the support of substantial evidence.

3       **C.    *Whether collateral estoppel applies*.**

4           1.    The parties' arguments.

5       Plaintiff argues that the ALJ improperly found T.M. not to be disabled in considering

6   T.M.'s DIB application despite the Commissioner's earlier SSI determination on August 3, 2018

7   that T.M. was disabled as of September 2017.  (ECF No. 24).   Plaintiff explains that, at the

8   hearing, Plaintiff's counsel "pointed out the objective findings that would support a sedentary

9   RFC as of September 2017" and that the "ALJ pointed to earlier pain management records at

10  Exhibits 14F and 18F, but did not offer any specifics as to how that evidence undermined

11  counsel's argument."  In any event, Plaintiff asserts that the SSI disability decision was final and

12  binding and that the ALJ was not permitted to reopen the decision or revise it.  Plaintiff argues

13  that the doctrine of collateral estoppel precluded the ALJ from finding that T.M. was not disabled

14  prior to his date last insured.  Because the ALJ did not point to any evidence that the SSI decision

15  was incorrect, the ALJ was required to accept the factual finding of disability prior to September

16  30, 2017.

17      The Commissioner responds that collateral estoppel does not apply here because: (1) the

18  favorable SSI determination came after the unfavorable determination on DIB; and (2) because

19  the ALJ explained why the SSI determination was wrong.  (ECF No. 29).   Regarding the first

20  argument, the Commissioner explains that courts have applied collateral estoppel to *new* claims

21  brought after a prior claim was favorably decided.  The Commissioner points out that T.M.

22  applied for DIB first in May of 2017 and applied for SSI in September of 2017.  The

23  Commissioner approved T.M.'s SSI claim on August 3, 2018, after the agency had already denied

24  T.M.'s DIB claim twice.  The SSI decision was thus not a previous determination.  Regarding the

25  second argument, the Commissioner asserts that the ALJ properly found that the SSI decision—

26  that Plaintiff's disability began in September 2017—was wrong because T.M.'s condition only

27  began to worsen after an intervening hospitalization following a medication overdose in

28  December 2017.  The Commissioner asserts that the December 2017 injury broke the chain

1  between T.M.'s date last insured and the June 18, 2018 examination that supported the SSI

2  disability finding.  And the ALJ pointed this out, noting that T.M. regularly had no difficulty

3  walking before December 2017.  The Commissioner points out that the intervening injury meant

4  that the June 2018 examination was not representative of T.M.'s functioning as of September 30,

5  2017, the date his insured status expired and the date after which he would no longer be eligible

6  to receive DIB.  The Commissioner concludes that the ALJ did not reopen the SSI determination,

7  but properly overcame collateral estoppel because the requirements for reopening a prior decision

8  are different than those for overcoming collateral estoppel.

9          Plaintiff replies that, when T.M. received the notice that his DIB was denied on August

10  23, 2017 that notice wrongfully listed his date last insured as March 31, 2017 (instead of

11  September 30, 2017).  (ECF No. 31).  As a result, T.M. did not believe that he could file a *new*

12  application, and believed the only way to keep his DIB claim alive was to appeal.  Plaintiff thus

13  argues that T.M. could not have filed a new application to which collateral estoppel would apply.

14  Plaintiff adds that the ALJ's reasoning that the intervening December 2017 injury broke the chain

15  between the date last insured and the June 2018 examination is an improper lay opinion and that

16  the September 2017 disability onset date is final and binding.

17          2.    Analysis.

18  20 C.F.R. § 404.950(f) governs collateral estoppel in the social security context.  Under

19  that regulation, if the agency has already decided an issue in a previous determination in a claim

20  involving the same parties, but arising under a different title of the Act, "the administrative law

21  judge will not consider the issue again, but will accept the factual finding made in the previous

22  determination or decision unless there are reasons to believe that it was wrong."  The Ninth

23  Circuit has not interpreted the meaning of "previous determination," in the context of 20 C.F.R.

24  § 404.950(f).

25          In *Russell C. v. Saul*, The Southern District of California considered an ALJ's decision not

26  to apply collateral estoppel in similar circumstances as the instant case.  *See Russell C. v. Saul*,

27  No. 3:20-cv-00256-MMA-RBM, 2021 WL 130025, at *1 (S.D. Cal. Jan. 14, 2021).  There, the

28  claimant filed concurrent applications for DIB under Title II and SSI under Title XVI.  *Id.*  The

1   Commissioner approved the claimant's SSI application on August 24, 2016, finding the claimant
2   disabled as of May 3, 2016.  *Id.*  An ALJ later considered and denied the claimant's DIB
3   application, issuing a written decision on November 16, 2018.  *Id.*  In that decision, the ALJ first
4   found that collateral estoppel did not "exactly apply to [the claimant's] current Title II
5   application…because [the claimant] originally filed a concurrent Title II and Title XVI disability
6   application as opposed to a 'new' Title II application."  *Id.* at *6.  Nonetheless, the ALJ
7   considered the Commissioner's approval of the claimant's SSI application, but found that the
8   determination was wrong.  *Id.* at 5-6.  Specifically, the ALJ noted that the claimant had performed
9   light work constituting substantial gainful activity between July 13, 2016 and June 2017, but had
10  failed to report this work in his appeals and mistakenly accepted both employment income and
11  Title XVI disability payments.  *Id.*  Because the claimant engaged in substantial gainful activity
12  only about a month after the Commissioner determined that the claimant was disabled, the ALJ
13  found that the favorable SSI determination was wrong.  *Id.*

14          The court also considered the claimant's argument that the ALJ reopened the SSI
15  determination without citing "good cause" to do so.  *Id.* at *7.  The court found the claimant's
16  argument unpersuasive, noting that the claimant "cite[d] no evidence that the ALJ actually or
17  implicitly reopened the SSI decision."  *Id.*  Considering the claimant's concurrent applications,
18  substantial gainful activity, the ALJ's cited reasons as to why he believed the SSI determination
19  was wrong, the court concluded that there was "no error in the ALJ's finding that collateral
20  estoppel does not apply to the Title II application."  *Id.* at 7.

21          The Court similarly finds that there was no error in the ALJ's finding that collateral
22  estoppel did not apply to T.M.'s DIB application.  The Commissioner urges the Court to find that
23  the August 3, 2018 SSI approval was not a "prior determination" because T.M. applied for DIB
24  before T.M. applied for SSI.  But Plaintiff does not cite any authority that mandates that
25  interpretation of 20 C.F.R. § 404.950(f).  And Plaintiff correctly points out that the Commissioner
26  approved T.M.'s SSI application *before* the ALJ issued the final decision denying T.M.'s DIB
27  application.

28

1

2

3

4

5

6

7

8

But the Court need not decide whether the SSI decision was a "prior determination" under 20 C.F.R. § 404.950(f) because, even if it were, the ALJ found that the SSI decision was wrong and sufficiently articulated his reasons for that finding.  During the hearing, the ALJ discussed his concern that he could not find a basis for the SSI decision on the record, but added that he would "try and see if [he could] establish whatever basis there might've been for the agency's Title XVI determination…"  (AR 92-95).  Ultimately, however, the ALJ found that the SSI determination was erroneous because the record demonstrated T.M.'s disability beginning after his injury in December of 2017, not September of 2017 as the SSI decision found.

9

10

11

12

13

14

15

16

17

18

> The agency found the claimant entitled to supplemental security income based on a determination of disability as of September 7, 2017 (*See* 2D), but the medical evidence of record, discussed by the disability determination service [DDS] medical consultants, shows the residual functional capacity assessment was based on a much later March 2018[3] consultative examination report (31F), which followed the two December 2017 hospitalizations (15F/1, 16, and 16F/6); thereafter, the claimant needed a walker and home oxygen. Prior reports by his neurologist showed normal gait before events in December 2017 and January 2018, and even afterward for a period (e.g., 8F/3, 18F/3).  While the evidence supports finding "severe" impairments before the claimant's September 30, 2017 date last insured, the degree of limitation alleged is not consistent with relevant medical and other evidence.  As discussed below, the evidence as a whole supports the finding that the claimant had the residual functional capacity found herein through the date last insured.

19

20

(AR 25).

21

22

23

24

Given this explanation, the Court finds that there is no error in the ALJ's finding that collateral estoppel did not apply to T.M.'s DIB application.  Additionally, Plaintiff's argument that the ALJ improperly reopened the SSI determination without good cause fails for the same reason the claimant's similar argument failed in *Russell C.*: Plaintiff points to no evidence that the

25

26

27

28

---

[3] The ALJ cites to the June 2018 consultative examination but refers to a "March 2018" examination.  This appears to be a typographical error and the ALJ appears to have been intending to refer to the June 2018 consultative examination.

1    ALJ reopened the SSI determination.  The Court thus finds that the ALJ did not err in finding that

2    collateral estoppel did not apply to T.M.'s DIB application.

3

4         **IT IS THEREFORE ORDERED** that Plaintiff's motion to substitute party (ECF No. 23)

5    is **granted.**  The Clerk of Court is kindly directed to add Laura S.[4] to the docket as Plaintiff in

6    place of Terry M.  Hereinafter, the caption should reflect this substitution.

7         **IT IS FURTHER ORDERED** that Plaintiff's motion for reversal and/or remand (ECF

8    No. 24) is **denied.**

9          **IT IS FURTHER ORDERED** that the Commissioner's countermotion to affirm (ECF

10   No. 29) is **granted**.  The Clerk of Court is kindly directed to enter judgment accordingly and

11   close this case.

12

13        DATED: August 4, 2023.

14        _____

15        DANIEL J. ALBREGTS
          UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28   _____
     [4] Laura' S.'s full name can be found in Plaintiff's motion at ECF No. 23.